Matter of Blakeman v New York State Pub. Campaign Fin. Bd.
2026 NY Slip Op 03347
May 28, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Bruce A. Blakeman et al., Respondents,
v
New York State Public Campaign Financing Board et al., Appellants, and Peter S. Kosinski et al., as Commissioners of the New York State Board of Elections, Respondents.

Decided and Entered:May 28, 2026
CV-26-0842
Calendar Date: May 27, 2026
Before: Garry, P.J., Pritzker, Reynolds Fitzgerald, Fisher And Mcshan, JJ.

Hodgson Russ LLP, Albany (Christopher Massaroni of counsel), for appellants.
Fusco Law Office, Albany (Adam Fusco of counsel), for Bruce A. Blakeman and another, respondents.
State Board of Elections, Albany (Kevin G. Murphy of counsel), for Peter S. Kosinski and another, respondents.

[*1]
Per Curiam.
Appeal from a judgment of the Supreme Court (Denise Hartman, J.), entered May 13, 2026 in Albany County, which, among other things, granted petitioners' application, in a combined proceeding pursuant to Election Law § 14-209 (4) and CPLR article 78 and action for declaratory judgment, to, among other things, annul a determination of respondent Public Campaign Finance Board finding that petitioners were ineligible to receive matching funds for the 2026 primary or general election for the public offices of Governor and Lieutenant Governor.
In 2020, the Legislature enacted a reformed Public Campaign Finance Program (hereinafter the Program) and created respondent Public Campaign Finance Board (hereinafter PCFB)FN1 to administer the Program (see L 2020, ch 48, pt ZZZ [eff. November 9, 2022]; Election Law art 14; see also 9 NYCRR part 6221). The legislation established a voluntary public financing system aimed at reducing the influence of special interests, reducing candidates' and officer holders' fundraising burdens, increasing government accountability and confidence in the government, encouraging broader candidate participation and enhancing public engagement in elections, among other things (Election Law § 14-200). Through the Program, a "participating candidate" running for statutorily enumerated state-level offices in a "covered election" — including, as relevant here, any primary, general or special election for Governor or Lieutenant Governor — (Election Law §§ 14-200-a [5], [14]) has the ability to qualify for, and timely receive payment of, public matching funds based on donations to their campaign (see Election Law §§ 14-203, 14-205 [3]). The Legislature subsequently amended the Election Law and several provisions of the Program (L 2025, ch 55, part QQ [eff. May 9, 2025]; L 2025, ch 55, part OO [eff. Aug 7, 2025]) to require, among other things, that a party designation for the public offices of Governor and Lieutenant Governor be jointly made (see Election Law §§ 6-104 [1]; 7-114 [1] [d]; 14-200-a, 14-204 [1]).
Critical to this appeal, article 14 of the Election Law grants PCFB the authority to promulgate rules and regulations necessary to administer the Program, including the provision of forms necessary to comply with the relevant statutes and regulations (see Election Law § 14-207 [3], [4]; see also Election Law § 14-203 [1] [d]). Under the Program regulations, candidates in a covered election must first register their campaign committee with PCFB by submitting the PCF-21 Type 1P Committee Registration Form (hereinafter PCF-21) (see 9 NYCRR 6221.5 [b]). Next, to be eligible to participate in the Program and receive matching funds, candidates must "submit a certification in the form of an affidavit, in such form as may be prescribed by PCFB, that sets forth their acceptance of and agreement to comply with the terms and conditions for the provision of such funds in each covered election" (Election Law § 14-203 [1] [d]; see also 9 NYCRR 6221[*2].7 [a], [c], [d]; 6221.9 [a] [4]). This is effectuated by using the PCF-22 Type 1P Committee Application/Certification Form (hereinafter PCF-22), through which a candidate and their political committee certify that they will comply with the requirements of article 14 of the Election Law and PCFB rules (see 9 NYCRR 6221.7 [c], [d]). PCF-22 applications/certifications must be submitted by a statutory deadline of four months prior to the primary election (see Election Law § 14-203 [1] [d]). This year that deadline was February 23, 2026. PCFB also maintains a statutory duty to, among other things, "provide compliance counseling and guidance to candidates seeking to participate in public financing" (Election Law § 14-207 [3]) and to offer "training . . . concerning compliance with the rules of the . . . [P]rogram, disclosure and record keeping requirements, obligations of the [P]rogram, and other relevant information as determined by the PCFB" (Election Law § 14-207 [3-a]). PCFB's regulations also provide a cure provision under which PCFB shall allow the candidate and committee an opportunity to cure any defects "[i]f it is determined that an application[/certification] is incomplete" (9 NYCRR 6221.7 [e] [3]). Under this regulation, "[i]f the certification is initialed, signed, and notarized, the deadline for such corrections is one week after the deadline of four months prior to the primary election" (9 NYCRR 6221.7 [e] [3]).
On December 16, 2025, petitioner Bruce A. Blakeman — a candidate running for the public office of Governor — registered for the Program by filing a PCF-21 and submitted a certification by filing an initialed, signed and notarized PCF-22. On December 17, 2025, Blakeman received written correspondence from PCFB, among other things, confirming its receipt of his filings, his registration in the Program and certifying his application/certification for admission into the Program. Meanwhile, on December 9, 2025, PCFB approved emergency regulations that became effective on January 7, 2026 in response to the 2025 amendments to the Election Law requiring that a party designation for the public offices of Governor and Lieutenant Governor be jointly made. As relevant here, the amended regulations added special rules for joint Governor and Lieutenant Governor candidacies (see 9 NYCRR 6221.11, 9 NYCRR 6221.21, 9 NYCRR 6221.26). Under the newly promulgated section 6221.26, candidates "running jointly for Governor and Lieutenant Governor shall be considered to be a single candidate for the same elective office in an election cycle" (9 NYCRR 6221.26 [b] [emphasis added]), and such candidates would have "one authorized committee . . . controlled by the candidate for Governor, provided, however, that the candidate for Lieutenant Governor shall remain subject to all rules under this [p]art not otherwise inconsistent with this section" (9 NYCRR 6221.26 [d] [1] [emphasis added]). The new regulation also set one of four dates from which the PCFB would [*3]consider the Governor and Lieutenant Governor candidates to be running jointly (see 9 NYCRR 6221.26 [c]). Regarding the registration requirement, section 6221.26 provided that the two candidates running for Governor and Lieutenant Governor "may jointly or separately register for the Program using [the PCF-21] prescribed by the PCFB" (9 NYCRR 6221.26 [e] [1] [emphasis added]). In contrast, regarding the application/certification requirement, section 6221.26 provided that "both candidates . . . shall jointly submit an application/certification [PCF-22 form] prescribed by the PCFB" (9 NYCRR 6221.26 [e] [2] [emphasis added]).
On February 11, 2026, petitioner Todd Hood was announced as Blakeman's running mate for the public office of Lieutenant Governor. Hood, however, did not separately file either a PCF-21 or PCF-22 with PCFB and, although Blakeman subsequently filed an amended PCF-21 and PCF-22 in February 2026 to reflect a change of treasurer, Hood was again not listed, named or referenced in these filings. Following the February 23, 2026 statutory deadline for filing the PCF-22, PCFB, by resolution dated March 31, 2026, found that both Blakeman and Hood were ineligible to receive public matching funds for the 2026 primary or general election because of their failure to timely submit a joint PCF-22.
Petitioners subsequently commenced this combined proceeding pursuant to the Election Law and CPLR article 78 and action for declaratory judgment seeking, among other things, to annul PCFB's March 2026 determination that Blakeman was ineligible for the Program for the 2026 primary or general election. PCFB, along with two Commissioners of respondent New York State Board of Elections, respondents Henry T. Berger and Essma Bagnuola (hereinafter collectively referred to as PCFB), moved, pre-answer, to dismiss the combined proceeding on various grounds, the gravamen of which was that petitioners were properly deemed ineligible for the Program because Hood failed to file a PCF-22.FN2 Supreme Court ultimately denied PCFB's motion to dismiss and granted that portion of the verified petition/complaint seeking annulment of PCFB's resolution of ineligibility and ordered that petitioners be given an opportunity to cure their incomplete PCF-22. Supreme Court held that, although Hood was on notice that he was required to file a PCF-22 and never did so, this merely rendered Blakeman's certification, which was actually a joint certification under section 6221.26, incomplete. Because PCFB failed to provide forms permitting petitioners to satisfy the new regulatory requirement that they jointly certify, update its educational materials regarding the joint application/certification process, advise Blakeman that his PCF-22 was incomplete, and afford him one week to cure as required by PCFB's own regulations, the court held that PCFB's determination that petitioners were ineligible for the program was arbitrary and capricious. PCFB appeals, principally contending that its resolution [*4]deeming petitioners ineligible for the Program was proper given Hood's failure to register and/or submit a PCF-22.
We affirm. In reviewing PCFB's determination, this Court must consider only whether the "determination was made in violation of lawful procedure, was affected by an error of law[,] or was arbitrary and capricious or an abuse of discretion" (CPLR 7803 [3]; see e.g. Matter of Winkler v New York State Educ. Dept., 245 AD3d 1045, 1046 [3d Dept 2026]). "An agency's determination is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts" but will be sustained if it "has a rational basis, . . . even if a different result would not be unreasonable" (Matter of LL 410 E. 78th St. LLC v Division of Hous. & Community Renewal, 44 NY3d 232, 237 [2025] [internal quotation marks and citations omitted]; see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]).
As an initial matter, there is no dispute here that Hood did not independently register for the Program using the PCF-21 or file his own application/certification using a PCF-22. Nor was Hood jointly included on Blakeman's amended PCF-22 filed in February 2026. Thus, PCFB's decision to find petitioners' submissions incomplete was neither arbitrary nor capricious, especially given that, even prior to the new January 2026 regulations, Hood was individually required to register and file both a PCF-21 and PCF-22.
However, we agree with Supreme Court that several factors render PCFB's determination that petitioners, jointly, were ineligible for the Program arbitrary and capricious.FN3 First, PCFB's new regulations to address the joint candidacy of Governor and Lieutenant Governor became effective after Blakeman filed his first PCF-21 and PCF-22 and after Blakeman received confirmation that he was registered and certified. As noted, those regulations provide that candidates "may jointly or separately register" for the Program using the PCF-21, and mandates that candidates "shall jointly submit an application/certification" using the PCF-22 (9 NYCRR 6221.26 [e]). However, PCFB never updated its forms to permit joint filings on a single form, even though the plain language of section 6221.26 directs the use of a specific, single form. Indeed, as Supreme Court detailed, the record reflects that less than three weeks before the February 23, 2026 deadline PCFB had internally recognized that its forms did not align with the new regulations for the Governor and Lieutenant Governor race and instructed its staff to review the forms submitted by candidates for those offices on a "case-by-case basis." Among other things, PCFB therefore proposed several solutions, including that it could accept separate sets of forms for each candidate and "merge [them] administratively" or accept "a single set of forms with both candidates on them, either with additional attached pages or where both [*5]have signed and initialed the docs, where applicable." However, the email, dated February 6, 2026, does not address what would happen if only one candidate had submitted the form, let alone where the candidate had already submitted the form before the new regulations became effective. Additionally, PCFB failed to notify the public of these determinations.
This failure to instruct the public is significant because, as already noted, PCFB has a statutory duty to "provide compliance counseling and guidance to candidates seeking to participate in public financing" (Election Law § 14-207 [3]) and to offer "training . . . concerning compliance with the rules of the . . . [P]rogram, disclosure and record keeping requirements, obligations of the [P]rogram, and other relevant information as determined by . . . PCFB" (Election Law § 14-207 [3-a]). Yet, PCFB's efforts in this regard had become outdated given the enactment of the new regulation, as neither the Program's handbook, nor the mandatory training that Blakeman had attended, addressed the precise manner of how to jointly submit an application/certification. Most significant, PCFB did not follow its own regulation requiring that it provide petitioners with "an opportunity to cure any defects" (9 NYCRR 6221.7 [e] [3]). Once Hood was publicly announced as the candidate for Lieutenant Governor, Blakeman and he were "considered to be running jointly for Governor and Lieutenant Governor" (9 NYCRR 6221.26 [c] [2]). Thus, at that point, Blakeman's previous filings were rendered incomplete. However, contrary to its own regulations, PCFB failed to notify petitioners that their filings were incomplete (see 9 NYCRR 6221.7 [e] [3]). This omission is especially important here, where PCFB previously confirmed, in writing, Blakeman's successful submission of the PCF-21 and PCF-22 — a confirmation that petitioners could reasonably rely upon under these unique circumstances (cf. Election Law § 14-207 [6]).
To be sure, Blakeman did submit an amended form after Hood was named as his running mate for Lieutenant Governor, which was also after section 6221.26 became effective. However, PCFB still failed to inform him that the information provided was incomplete and failed to provide any opportunity to cure, despite the dearth of updated informational materials notifying candidates how to apply the new rules to joint candidates or, importantly, a proper form on which to file joint submissions. In our view, penalizing not only Hood, but also Blakeman, who controls the only authorized committee for purposes of the Program (see 9 NYCRR 6221.26 [d] [1]), when no new form or educational materials had been propagated, failed to serve the basic statutory objectives of the Program identified by the Legislature, including "reform of [the] campaign finance system . . . crucial to improving public confidence in the state's democratic process" and "reducing the reality and appearance of corruption" in campaign finance (Election Law[*6]§ 14-200). Thus, under these unusual circumstances — the changes in the law just months or, in the case of section 6221.26, weeks before the applicable deadlines; the lack of forms to permit joint filing as set forth in section 6221.26; internal uncertainty at PCFB about how to handle the filings under the new law; and PCFB's failure to update educational materials in time for this election so that candidates could reasonably understand their obligations under the new rules — PCFB's determination to exclude petitioners from the Program under a theory of strict compliance was irrational (see generally Matter of Seawright v Board of Elections in the City of N.Y., 35 NY3d 227, 233 [2020]).
In view of the foregoing, we discern no error in Supreme Court's order affording petitioners one week to cure the defects identified by PCFB (cf. Matter of Amato v Sullivan, 211 AD3d 778, 781 [2d Dept 2022]).FN4 We express no view on how petitioners should use the existing required forms to satisfy their filing obligations but encourage the parties to rely on PCFB's expertise in this regard and its previously identified methods to address this issue. To the extent that we have not addressed any of PCFB's remaining contentions, they are either academic in light of our decision or have been considered and determined to be without merit.
Garry, P.J., Pritzker, Reynolds Fitzgerald, Fisher and McShan, JJ., concur.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1
The petition erroneously names PCFB the Public Campaign Financing Board, rather than the Public Campaign Finance Board.

Footnote 2
Respondents Peter S. Kosinski and Anthony J. Casale, as Commissioners of the Board of Elections, filed an answer in support of the petition contending that petitioners reasonably relied on their certification and communications such that the severe penalty of disqualification from the Program was unwarranted.

Footnote 3
We emphasize that these factors should be unique to this election cycle — a product of the recent changes to law impacting this year's Governor and Lieutenant Governor race.

Footnote 4
Supreme Court's order was stayed by operation of law by PCFB's notice of appeal (see CPLR 5519 [a]; see also CPLR 5519 [e]).